**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DANIEL CLAY,

                          Plaintiff,

        v.                                    No. 08-CV-676
                                           (NAM/DRH)

R.N. KELLMURRAY, Nurse, Clinton
Correctional Facility,

                          Defendant.
_____

**APPEARANCES:**                       **OF COUNSEL:**

DANIEL CLAY
99-A-0386
Plaintiff Pro Se
Coxsackie Correctional Facility
Post Office Box 999
Coxsackie, New York 12051

HON. ANDREW M. CUOMO         KRISTA A. ROCK, ESQ.
New York State Attorney General     Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Daniel Clay ("Clay"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

1983 alleging that defendant RN. Kellmurray ("Kellmurray"),[2] a nurse at Clinton Correctional

_____

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

      [2]Defendant's proper name is Cheryl Kellmurray-Erickson.  Kellmurray Decl. (Docket
No. 23-3) at 4.

Facility ("Clinton"), violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is Kellmurray's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 23. Clay opposes the motion. Dkt. No. 33. For the following reasons, it is recommended that Kellmurray's motion be granted.

## I.  Background[3]

The facts are related herein in the light most favorable to Clay as the non-moving party. See Subsection II(A) infra.

In 2003, Clay was diagnosed with a thyroid condition and prescribed Levothyroxine. Clay Dep. (Dkt. No. 23-6) at 7. Originally, Clay's prescription called for two tablets of Levothyroxine per day. Id. Thereafter, Clay requested that his prescription be decreased to one tablet per day. Id. at 708. The medical staff at Clinton where Clay was incarcerated complied with his request. Id. at 9. Thus, in November 2005, Clay's prescription called for him to take one pill a day. Kellmurray Decl. (Dkt. No. 23-3) ¶ 4; Clay Dep. at 9.

On November 10, 2005, Clay refilled his thyroid prescription. Dkt. 32 at 4. Kellmurray saw Clay on November 29, 2005 because he had been unable to obtain a refill of his prescription. Id.; Kellmurray Decl. ¶ 5. On November 20' Clay had requested a refill,[4] but it had been denied "because [Clay] ha[d] run out of his medication earlier than he should . . .

---

[3] Defendant's counsel filed Clay's medical records traditionally with the court. Clay has also provided the relevant portions of his medical records in his moving papers. Dkt. Nos. 32 at 4, 32-3 at 5. The records are identical. For consistency, all citations to the medical record will be to Clay's motion papers.

[4] Clay's prescription was for thirty days. Kellmurray Decl. ¶ 6. Thus, his November 10 refill should have lasted until December 10.

[because he was] taking two pills a day instead of the prescribed one pill a day."  Kellmurray Decl. ¶¶ 5, 7; see also Clay Dep. at 9, 12-14.  Lacking the ability to write prescriptions, Kellmurray referred Clay for an appointment with a nurse practitioner on December 2 as Clay's behavior in taking more medication than the prescribed dosage was dangerous and required re-evaluation.  Kellmurray Decl. ¶¶ 8-9, 15; see also Clay Dep. at 19-20 (admitting that taking medication in doses other than in that which it was prescribed was dangerous).  On December 2, 2005, Clay was seen by the nurse practitioner and issued a new prescription.  Kellmurray Decl. ¶10.  In light of Clay's prior non-compliance, the new prescription was "nurse administered and, meaning that [Clay] was given his pill each day by a nurse rather than permitting [him] to have possession of an entire prescription amount of pills."  Id. ¶ 11.  Clay was without medication for an excess of twenty-one days.  Clay Dep. at 27.

After the appointment with Kellmurray on November 29, Clay filed a grievance seeking immediate provision of his medication.  Compl. at 8.  The Superintendent found that Clay was seen by medical staff on November 29 when it was discovered that he was taking more medication than prescribed.  Id. at 10.  The Superintendent further found that the nurse practitioner evaluated Clay on December 2 and ordered Clay subsequently to receive his medication daily from the nursing staff.  Id.  Thus, the grievance was "accepted to the extent that [Clay] has been placed on nurse administered thyroid medication to be assured that appropriate dosage . . . is being administered."  Id.  This action followed.

## II. Discussion

Clay asserts that Kellmurray violated his Eighth Amendment rights by failing

immediately to provide medical attention from a medical professional and being deliberately indifferent to his thyroid condition by failing to order more medication. Kellmurray argues that Clay's constitutional claims are meritless and that she is entitled to qualified immunity.


### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d

4

471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185,

191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district

courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings

liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477

U.S. at 247-48.


### B.  Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

punishment."  U.S. Const. amend. VIII.  This prohibition extends to the provision of medical

care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is

twofold. First, the prisoner must show that the condition to which he was exposed was

sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner

must show that the prison official demonstrated deliberate indifference by having knowledge

of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who

actually knew of a substantial risk to inmate health or safety may be found free from liability

if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at

844.

"'Because society does not expect that prisoners will have unqualified access to

healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to

state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting

Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a

serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Here, defendants do not challenge that Clay's thyroid condition constituted a serious medical need.  Without deciding that issue, based on the medical evidence submitted, it is clear that Kellmurray was not deliberately indifferent to Clay's medical treatment.  First, the record fails to establish any period of delay in the provision of Clay's medication.  It is uncontested that Clay was given a thirty day supply of medication which should have lasted until December 10 and that it did not, because of his own actions in taking more medication

than prescribed.  Kellmurray Decl. ¶¶ 5, 7; Clay Dep. at 9, 12-14.  Thus, any delay between his initial contact with a medical professional on November 29 and receiving his medication via nurse administration on December 2 is attributable to Clay's own actions.  His choices resulted in his medication deprivation, and that cannot now be blamed on Kellmurray under the guise of a delay for not immediately refilling his prescription.

Second, Clay's conclusory allegations that Kellmurray was aware of his misuse of his medication on November 20th is contradicted by Kellmurray's declaration and Clay's medical records.  The medical records clearly indicate that Kellmurray was made aware of Clay's inappropriate refill request and his self-medicating tendencies when she examined him during sick call on November 29, 2005, not earlier.  Kellmurray Decl. ¶ 5; Dkt. No. 32 at 4.  After Kellmurray examined Clay, he only waited four days before seeing the nurse practitioner, a relatively brief amount of time.

Third, the record is devoid of anything which can be construed as deliberately indifferent behavior.  Clay's subsequent complaints that he did not receive a prescription immediately upon his request are insufficient to sustain an Eighth Amendment claim. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves.  The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted).  As Kellmurray indicated, and Clay acknowledged, his misuse of his medication presented a dangerous situation; thus, Clay required consultation with a medical professional that could adjust his prescription to alleviate his symptoms safely.  Once Kellmurray was aware of Clay's actions, she acted in a manner consistent with assuring Clay got an appropriate evaluation, not one in which she

was dismissing his needs.  The medical necessity was not immediately prescribing Clay

with drugs that he could misuse but insuring the medical attention that he required.

Kellmurray's actions belie any claims of deliberate indifference.  Moreover, the request to

have Clay's thyroid medication administered daily by the medical staff also illustrates the

desire of the medical personnel to provide safe and appropriate care.  These actions

contradict those of an individual being deliberately indifferent.

Fourth, allegations that Clay should have received additional medication immediately

rather than waiting four days for a medical appointment and re-evaluation, are insufficient to

state an Eighth Amendment claim.  At best, such allegations constitute no more than a

difference in opinion as to the appropriate course of action for his thyroid condition.  Such

differences in opinions do not support an Eighth Amendment allegation.  Sonds, 151 F.

Supp. 2d at 312.  The test is one of medical necessity and not inmate desire.  As previously

discussed, Kellmurray provided medically appropriate and necessary care by referring Clay

to have his prescription needs re-evaluated to ensure the safest and most effective course

of treatment.

Accordingly, Kellmurray's motion for summary judgment should be granted.


### C. Qualified Immunity

Kellmurray claims that even if Clay's constitutional claims are substantiated, she is

entitled to qualified immunity.  Qualified immunity generally protects governmental officials

from civil liability "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002)

(McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the

constitutional privileges "are clearly established, a government actor may still be shielded by

qualified immunity if it was objectively reasonable for the . . . official to believe that his [or

her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL

839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925

(2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations

omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there

would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there

is a constitutional violation does a court proceed to determine whether the constitutional

rights, of which a reasonable person would have known, were clearly established at the

time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the

inquiry need not be reached concerning Clay's claims because, as discussed supra,

accepting all of Clay's allegations as true, he has not shown that Kellmurray violated his

constitutional rights.

Accordingly, in the alternative, Kellmurray's motion should be granted on this ground.


### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that Kellmurray's motion for summary judgment (Dkt. No. 23) be

**GRANTED** and that judgment be entered for Kellmurray on all claims.

9

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  March 1, 2010
   Albany, New York

David R. Homer
U.S. Magistrate Judge

10